UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARAH KNUDSEN,

       Plaintiff,

v.                                Case No. 1:06-cv-489
                                Hon. Robert Holmes Bell

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI).

Plaintiff was born on October 31, 1964, graduated from high school and had additional job training in computer data entry  (AR 77, 104).[1]  This is her third attempt to obtain disability payments.

First, plaintiff filed an application for SSI on July 27, 1995 (AR 35).  This was denied initially, on reconsideration, and in a hearing decision dated September 6, 1996 (AR 35).  The Appeals Council found no basis to review the decision, which became the final decision of the Commissioner (AR 35).

Second, plaintiff filed applications for Disability Insurance Benefits (DIB) and SSI in March 2001 (AR 35).  The 2001 applications alleged a disability onset date of June 1, 2000 (AR

_____

[1] Citations to the administrative record will be referenced as (AR "page #").

35-36).  The applications were denied initially and in a hearing decision dated January 25, 2003 (AR 35-44).  Plaintiff did not appeal the January 25, 2003 decision, which became the final decision of the Commissioner (AR 18).

Third, plaintiff filed the present application for SSI, alleging, once again, that she became disabled on June 1, 2000 (AR 77).  The Administrative Law Judge (ALJ) determined that no new and material evidence was submitted to warrant reopening the January 23, 2003 decision denying benefits (AR 18).  Accordingly, the ALJ dismissed plaintiff's claim for disability from the alleged onset date of June 1, 2000 through January 23, 2003 pursuant to the doctrine of res judicata, limiting plaintiff's present disability claim to the period beginning January 24, 2003 (AR 18).

In her present application, plaintiff identifies previous employment as food service (dishwasher, server, prep cook), a lineworker in a factory and a laborer for a temporary worker service (AR 101, 107).  Plaintiff identified her disabling condition as fibromyalgia, scoliosis, headaches, muscle spasms and tunnel vision (AR 100).  After administrative denial of plaintiff's claim, the ALJ reviewed plaintiff's claim *de novo* and entered a decision denying these claims on August 22, 2005 (AR 18-31).  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*,

25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment

meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). *See Brooks v. Sullivan*, No. 90-5947, 1991 WL 158744 at *2 (6th Cir. Aug. 14,1991) ("[t]o establish medical eligibility for SSI, plaintiff must show either that he was disabled when he applied for benefits . . . or that he became disabled prior to the Secretary's issuing of the final decision on this claim . . . 20 C.F.R. §§ 416.335, 416.330").

4

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  Following the five steps, the ALJ initially found that plaintiff has not engaged in substantial gainful activity since her alleged onset date (AR 30).  Second, the ALJ found that plaintiff suffered from severe impairments of myalgia and myositis (AR 30).  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 30).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> required to lift, carry, push and/or pull up to 20 pounds occasionally and 10 pounds frequently; stand up to 6 hours of an 8-hour workday; sit up to 6 hours of an 8-hour workday; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; and occasionally balance, stoop, kneel, crouch, or crawl.

(AR 30).    The ALJ found that plaintiff could not perform any of her past relevant work (AR 30). The ALJ also found that plaintiff's statements regarding her limitations were not entirely credible (AR 30).

At the fifth step, the ALJ found that plaintiff could perform a significant number of jobs in the region (Michigan), including custodian (20,000 jobs) and security guard (10,000 jobs) (AR 29-30).  Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 30-31).

## III.  ANALYSIS

Plaintiff raised one issue on appeal:

**The Commissioner erred as a matter of law in assessing Ms. Knudsen's credibility and forming an inaccurate hypothetical that did not accurately portray Ms. Knudsen's impairments.**

A.    **Legal standard**

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* A hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Thus, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994).

In addition, it is the ALJ's function to resolve conflicts in the evidence and determine issues of credibility. *See Siterlet v. Secretary of Health and Human Servs.*, 823 F. 2d 918, 920 (6th Cir. 1987) (per curiam); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). "It [i]s for the Secretary and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). When discrepancies exist between the claimant's testimony and the written record, the reviewing court does not substitute its credibility findings for that of the ALJ. *See Bentley v. Commissioner*, 23 Fed. Appx. 434, 436 (6th Cir. 2001); *Gooch v. Secretary of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).

6

**B.     The ALJ's credibility determination**

The administrative record reflects that the ALJ posed eight hypothetical questions to the VE (AR 328-31).   Plaintiff does not identify the hypothetical question or questions at issue, but makes only a cursory reference to three hypotheticals located on pages 328, 329 and 330 of the administrative record.   Plaintiff's Brief at 9.

It appears that the ALJ based the disability determination upon the following hypothetical question:

> The state agency's RFC, in Exhibit B-2F [AR 180-90], was for a limited range of light work with lifting up to 20 pounds occasionally or 10 pounds frequently and being on her feet or sitting six hours out of eight, occasional on all the postural categories, except never climbing ladders, ropes or scaffolds.  Of course, that would rule out her former jobs at the medium or up to the very heavy level ?

> *        *        *

> And with entry level, light jobs, also factor in her academic limitations of tenth grade reading and third grade math which are performed with those restrictions?

(AR 329).   The VE responded that a person with these limitations could work as a custodian (20,000 positions) and a security guard (10,000 positions) (AR 329).

The gist of plaintiff's argument is that because the ALJ erred in evaluating plaintiff's credibility, he based the hypothetical questions on improper assumptions did not accurately portray her impairments.  Plaintiff summarized her argument as follows:

> The ALJ discounted Ms. Knuden's credibility/testimony in order to deny benefits.  If the ALJ had found Ms. Knudsen's testimony credible, Ms. Knudsen would have been entitled to disability because she would be incapable of performing substantial, gainful activity on a full-time, regular and sustained basis because of the need to lie down and because of her pain and fatigue leading to the inability to perform on an 8-hour a day, 5-days a week schedule.

Plaintiff's Brief at 10.

7

The ALJ found that plaintiff's allegations of disability were not credible:

> The claimant alleges that she is disabled by her impairments. The evidence, however, clearly indicates that she is the primary caretaker for her mother as well as her 95 year old grandmother. In fact she told Dr. Cornellier that she needed respite from her caretaking duties, complaining that her siblings were not providing assistance. The record seems to indicate that the claimant is performing a significant amount of work activity in her caretaking duties. Additionally, the evidence is clear that the claimant has not followed the prescribed dosage of her pain medications and has obtained medication from improper sources. She has been told by Dr. Beck as well as Dr. Barber that she should not take narcotic drugs for her condition, but clearly (from her testimony) she has not weaned from the drugs and according to Dr. Cornellier she was "dedicated" to the possibility and probability of long term use of the drugs (Exhibit B-13) [AR 294-96]. The undersigned finds that the claimant's allegations of disablity are not credible.

(AR 28).

Plaintiff contends that the ALJ's evaluation of her role as a caretaker is unsupported by the evidence, because the ALJ stated that "the record seems to indicate that the claimant is performing a significant amount of work activity in her caretaking duties" (AR 28) (emphasis added). In addition, plaintiff contends that the ALJ erred in failing to inquire as to the exact nature of her "caretaking duties." Plaintiff's Brief at 7. I disagree.

On August 23, 2004, plaintiff reported to a psychologist, Vincent Cornellier, Ph.D., that she "is starting to show the strain of being the major caretaker" for both her "failing" mother and her 95-year old grandmother (AR 294). Because plaintiff's siblings do not "spend much time with the elders," she is in need of "respite" from her caretaking responsibilities (AR 294). Plaintiff's definition of herself as the "major caretaker" for two elderly women would indicate that she is performing a significant amount of work (AR 294). Furthermore, plaintiff advised Dr. Cornellier that she "continues to slowly build the room for herself or apartment for herself in the barn" (AR 294). Such an undertaking indicates that she can perform work-related activities.

8

Next, plaintiff contends that the ALJ should not criticize her medication usage. Plaintiff's Brief at 8. Again, I disagree. On July 6, 2004, plaintiff reported to Dr. Cornellier that she ran out of Darvocet and was taking a friend's Vicodin (AR 296). Dr. Cornellier advised plaintiff that "it was impractical, imprudent and, in fact, illegal to take someone else's medication without prescription" (AR 296). The doctor felt that plaintiff "continues to be high risk for narcotic medication of any kind" (AR 296). That same day, a physician at a pain clinic, Howard J. Beck, M.D., planned to have plaintiff weaned off of narcotic medication, and to treat her fibromyalgia with increased physical and aerobic activity and sleep improvement (AR 242). Dr. Beck reduced plaintiff's Darvocet to eight tablets a day and told her to concentrate for the next two weeks solely on exercise (AR 242). Dr. Beck hoped to have plaintiff weaned off of narcotics within two to three months (AR 242). The record does not reflect that plaintiff followed this plan. On July 26, 2004, Dr. Cornellier noted that plaintiff "has relied on short-active narcotics for a long time and is very dedicated to the possibility and probability of continuing to do so" (AR 295).

Plaintiff's compliance with her prescribed treatment is relevant to the disability determination. As a general rule, an impairment that can be remedied by treatment with reasonable effort and safety cannot support a finding of disability. *Johnson v. Secretary of Health and Human Services*, 794 F.2d 1106, 1111 (6th Cir. 1984); 20 C.F.R. § 404.1530(a) (in order to get benefits, the claimant must follow the treatment prescribed by the claimant's physician). *See, e.g., Raney v. Barnhart*, 396 F.3d 1007, 1011(8th Cir. 2005) (diabetic claimant's non-compliance with dietary regime and medication is inconsistent with an allegation of disability). Here, the record reflects that plaintiff is not disposed to weaning herself from narcotic pain medication, contrary to her medical providers' treatment plan, and in fact used pain medication prescribed to another person.

Accordingly, the ALJ could properly discount plaintiff for failing to follow a prescribed course of treatment.

Next, plaintiff criticizes the ALJ's evaluation of a "key functional assessment" performed by Kay Gloden, P.T. (AR 27-28, 150).[2]  In his decision, the ALJ noted an inconsistency between Ms. Gloden's assessment that plaintiff could lift no more than 10 pounds, with a later opinion by Ms. Gloden that plaintiff could perform a significant range of light work (i.e., lift 20 pounds) (AR 27).  Plaintiff correctly points out that Ms. Gloden did not change her opinion; rather, the ALJ erroneously attributed the state agency's RFC determination to her (AR 27).

Nevertheless, plaintiff fails to explain how this error affected the ALJ's credibility determination.  The court's ability to review Ms. Gloden's assessment is hampered by the fact that someone redacted or attempted to redact large portions of the assessment narrative (AR 153-58).  Some of the attempted redactions appear to support Ms. Gloden's conclusion that plaintiff's assessment "did not represent her maximum capability" (AR 150, 153-58).  For example, it appears that someone attempted to redact the comments related to plaintiff's balance assessment, which included her comment that "MY LEGS ARE FAIRLY STRONG; I WALK OFTEN" and a notation that "Balance maintained with no pain reported nor pain behaviors demonstrated" (AR 155). Based on this record, the court concludes that substantial evidence supports the ALJ's finding that plaintiff's allegations of disability are not credible (AR 28).

---

[2] The ALJ sometimes refers to Ms. Gloden as "Ms. Golden."

### C.        Alleged discrepancy with Dr. Thompson's credibility determination

Next, plaintiff contends that a discrepancy exists between the ALJ's credibility

determination and the RFC assessment performed by the state agency physician, Dr. Thompson:

> while the ALJ recognizes and utilizes the State RFC in his denial of Ms. Knudsen's
> claim, he fails to address and discuss why he chose to discount the fact that it was
> felt Ms. Knudsen was found to be "**credible**" given her objective medical evidence
> and the stated symptoms concerning her functional capacity (Tr. 189).

Plaintiff's Brief at 9-10 (emphasis in original).  I find no discrepancy here.  The ALJ found that

plaintiff had an RFC consistent with Dr. Thompson's assessment, which would include the doctor's

credibility determination with respect to the RFC (AR 28).

### D.        Plaintiff's treating physician

Finally, plaintiff makes the bald assertion that,

> In the alternative, the ALJ incorrectly chose to ignore the opinions of Ms. Knudsen's
> treating physicians as argued above.  As a result, the case should be reversed and
> remanded for an award of benefits.

Plaintiff's Brief at 10.

Plaintiff's brief contains no discussion with respect to the ALJ's adoption, or failure

to adopt, opinions expressed by treating, examining or non-examining physicians.  Nor does plaintiff

explain how the alleged error would require the reversal and remand for an award of benefits.

"[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed

argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in

a most skeletal way, leaving the court to  . . . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d

989, 995-96 (6th Cir. 1997).  Accordingly, the court deems this issue waived.

11

## IV.      Recommendation

I  respectfully recommend that the Commissioner's decision be affirmed.


Entered:  July 2, 2007                            /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).